Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC BRUNO-JOAQUIN,<br><br>Defendant. | Case No.   MJ23-229<br><br>COMPLAINT for VIOLATION<br><br>Title 8, U.S.C. Sections 1324 (a)(1)(A)(i) and (B)(i) (Bringing in Aliens at a Place Other than Port of Entry, Private Financial Gain) and (a)(1)(A)(ii) and (B)(i) (Illegal Transportation of an Alien, Private Financial Gain) |

BEFORE, S. Kate Vaughan, United States Magistrate Judge, United States Courthouse, 700 Stewart Street, Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT ONE

**(Bringing Alien into United States at Place Other than a Designated Port of Entry, Private Financial Gain)**

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly bring to the United States an alien, namely C.C., knowing that C.C. was an alien, at a place other than a designated

Complaint - 1
*United States* v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

port of entry and at a place other than as designated by the Secretary of the Department of Homeland Security, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (B)(i).

## COUNT TWO

### (Illegal Transportation of an Alien, Private Financial Gain)

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly transport to the United States an alien, namely C.C., knowing that C.C. was an alien, and to help C.C. remain in the United States illegally, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (B)(i).

## COUNT THREE

### (Bringing Alien into United States at Place Other than a Designated Port of Entry, Private Financial Gain)

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly bring to the United States an alien, namely M.G., knowing that M.G. was an alien at a place other than a designated port of entry and at a place other than as designated by the Secretary of the Department of Homeland Security, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (B)(i).

## COUNT FOUR

### (Illegal Transportation of an Alien, Private Financial Gain)

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly transport to the United States an alien, namely M.G., knowing that M.G. was an alien, and to help M.G. remain in the United States illegally, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (B)(i).

//

Complaint - 2
*United States* v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**COUNT FIVE**

**(Bringing Alien into United States at Place Other than a Designated Port of Entry, Private Financial Gain)**

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly bring to the United States an alien, namely K.D., knowing that K.D. was an at a place other than a designated port of entry and at a place other than as designated by the Secretary of the Department of Homeland Security, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (B)(i).

**COUNT SIX**

**(Illegal Transportation of an Alien, Private Financial Gain)**

On or about April 9, 2023, in Whatcom County, within the Western District of Washington, ERIC BRUNO-JOAQUIN, did knowingly transport to the United States an alien, namely K.D., knowing that K.D. was an alien, and to help K.D. remain in the United States illegally, and did so for private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (B)(i).

**INTRODUCTION**

1. I, Lacey E. O'Neal, am a United States Border Patrol Agent under the direction of Customs and Border Protection, an agency within the Department of Homeland Security. Part of my duties entail the location and apprehension of foreign nationals in the United States who have been engaged in criminal activity. I also enforce federal criminal laws relating to the unlawful entry of individuals that have not presented themselves for inspection at a designated Port of Entry. I received training at the U.S. Border Patrol Academy in Charleston, South Carolina. While there, I completed what is the equivalent of two years of college Immigration Law, Naturalization Law, Criminal Law and Statutory Authority. Upon completion of the Academy, I received additional training on the Field Training Unit at my duty station. The continued training I received

Complaint - 3
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

included interrogation and interviewing techniques, how to collect and process evidence, proper seizure methods and processing of narcotics, firearms and contraband, conducting surveillance and tracking, as well as extensive use of force and firearms training. I have been employed as an agent of the United States Border Patrol for almost twenty (20) years.

2. The information contained in this Complaint is based on my personal knowledge, information relayed to me by other law enforcement officers and witnesses, including other Border Patrol agents and the Citizenship and Immigration Services (hereinafter "CIS") within the Department of Homeland Security, and information gleaned from my review of reports and evidence related to this investigation. The discussion below includes only the information I believe necessary to establish probable cause that BRUNO-JOAQUIN committed the offense alleged in this Complaint. I do not purport to summarize all the evidence gathered during my investigation, nor does the discussion below include all facts known to me or others involved with this investigation.

## SUMMARY OF PROBABLE CAUSE

3. On April 9, 2023, at approximately 12:55 a.m., Border Patrol Agent Charles Watts and Border Patrol K-9 Agent Calvin Maas were performing line watch duties along the United States and Canada border in and around the city limits of Sumas, Washington. Line watch is a blanket term used by agents when referring to their patrol duties. Those duties include responding to sensor activity, looking for signs of cross border entries, checking known crossing locations and remaining highly visible to deter illegal entries.

4. At this time, Blaine Sector Dispatch, via Remote Video Surveillance System, observed two small vehicles parked on South Pass Road near Kendall, Washington. This is a remote, rural area that is known to me as one frequently used for alien and drug smuggling activity. The location is not a designated port of entry or otherwise designated by a United States immigration official for border crossing. As

Complaint - 4
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  dispatch relayed what they observed, at least four individuals were seen running in a
2  southern direction across the International Border from Canada into the United States. All
3  four individuals got into the two awaiting vehicles. The vehicles then left the area at a
4  high rate of speed.

5       5.     Agents Maas and Watts advised that they were enroute to the area. The
6  agents communicated to each other to position themselves at the two points of egress the
7  vehicles could take to exit the area. Agent Watts staged at the intersection of Kendall
8  Highway (WA Route 547) and South Pass Road while Agent Maas continued on toward
9  the intersection of Kendall Highway (WA Route 547) and Mount Baker Highway (WA
10 Route 542). As Agent Maas approached the intersection, the agent encountered two small
11 sedans traveling in tandem. The two vehicles slowed to almost a complete stop upon
12 noticing Agent Maas's vehicle at the intersection. Once the vehicles started moving
13 again, Agent Maas was able to see that there were several individuals inside each vehicle.
14 Agent Maas then began to follow the two vehicles as they turned south onto WA Route
15 542 all the while advising Agent Watts the direction of travel and the possibility that
16 these may be the vehicles that Dispatch called out.

17      6.     While waiting for Agent Watts to get closer, Agent Maas contacted
18 Dispatch to advise them that a black Honda Civic and red Honda Civic has been
19 encountered and to run checks on the vehicle that was directly in front of the agent. The
20 vehicle bearing Washington license plate CES6539 came back to a red Honda Civic out
21 of Seattle, Washington, furthering Agent Maas's suspicion that these two vehicles were
22 in fact the suspect vehicles. It is common practice for the individuals that pick-up
23 subjects who have illegally crossed into the United States to travel up from Seattle to the
24 predesignated locations. Once the subjects have loaded into the vehicles, they are then
25 transported to Seattle to eventually make their way to their final destination. As Agent
26 Watts caught up to Agent Maas, both agents activated their emergency lights to conduct a
27

Complaint - 5
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vehicle stop on both vehicles. Both vehicles yielded to the emergency lights on Highway 9, mile marker 76.

7. Agent Maas approached the black Honda Civic, the lead vehicle, while Agent Watts approached the red Honda Civic. Both agents identified themselves as United States Border Patrol Agents to the drivers. The agents noticed there were five individuals in each vehicle and began to question the drivers in English. Both drivers claimed to only speak Spanish. Agents Maas and Watts then began to interview the drivers and the passengers in the Spanish language. All Border Patrol Agents have to become proficient in the Spanish Language in order to graduate the Academy. The training they receive is the equivalent of two years of college level Spanish. After the Academy, agents further their Spanish proficiency while on the Field Training Unit and are required to maintain their fluency throughout their career.

8. During questioning of the occupants of the red Honda Civic, Agent Watts asked the front seat passenger, later identified as Eric BRUNO-JOAQUIN, for his identification. BRUNO-JOAQUIN provided Agent Watts with an international driver's license from Canada in his name. BRUNO-JOAQUIN was then asked of what country he was a citizen of. BRUNO-JOAQUIN stated that he was from Mexico. Agent Watts asked every individual occupying the red Honda Civic if they were citizens of the United States to which each individual claimed they were not. After confirming that all occupants of both vehicles were in fact present in the United States without having crossed through a designated port of entry and/or in possession of the proper documents that would allow them to enter, pass through, or remain in the United States, the agents advised them they were all being detained for immigration violations and taken back to the station for further questioning.

9. On April 10, 2023, a video-recorded sworn statement was taken from C.C. at the Sumas Border Patrol Station at 12:05 a.m. Supervisory Border Patrol Agent Angel O. Ortiz and Border Patrol Agent -Intel Justin Engels conducted the interview in C.C.'s

Complaint - 6
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

native Spanish language. All Border Patrol Agents have to become proficient in the Spanish Language in order to graduate the Academy. The training they receive is the equivalent of two years of college level Spanish. After the Academy, agents further their Spanish proficiency while on the Field Training Unit and are required to maintain their fluency throughout their career. Agent Ortiz is a native of Puerto Rico and has been fluent in Spanish his entire life. In the interview that followed, C.C. made the following statements:

    10.    C.C. stated that he is a Mexican national and has never had permission to enter the United States legally. C.C.'s claims were verified through fingerprints and records checks. His cousin made the arrangements for him to enter the United States. The person his cousin contacted was named Pedro. C.C. flew from Mexico to Toronto, Canada on April 8, 2023. The following day, C.C. then flew to Vancouver, British Colombia, Canada. At the airport, one of the persons that was with him contacted the pickup ride. The person that contacted the pickup ride was identified only as "El Chaparrito."

//
//
//

Complaint - 7
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     C.C. stated that "El Chaparrito" was already in Canada and that "El Chaparrito" was also the passenger in the pickup ride, a red BMW. Once the red BMW arrived to pick them up, the driver of the red BMW told them that he was going to give them a ride but only three at a time. The red BMW arrived at the airport at approximately 7:10 P.M. C.C. was told to turn off his cell phone and the driver of the red BMW, who was described as obese and a person that wore glasses, took him and two other people from the airport to the border area. C.C. was told by "El Chaparrito" that once at the border that all he needed to do was run from the Canada side of the border to the United States side of the border. Once C.C. crossed the border into the United States, he saw two vehicles and he was told to get in one of the vehicles. Before C.C. crossed the border, he paid "El Chaparrito" $2000.00 CAD. C.C. believes that the driver of the load vehicle knew that they were all illegally present in the United States and that "El Chaparrito" was in the front passenger seat of the load vehicle. As noted above, the front passenger in the Red Honda Civic was BRUNO-JOAQUIN.

12.     On April 9, 2023, a video-recorded sworn statement was taken from M.G. at the Sumas Border Patrol Station at 11:05 p.m. Supervisory Border Patrol Agent Angel O. Ortiz and Border Patrol Agent -Intel Justin Engels conducted the interview in M.G.'s native Spanish language. In the interview that followed, M.G. made the following statements:

13.     M.G. stated he is a Mexican national and has never had permission to enter the United States legally. M.G.'s claims were verified through fingerprints and records checks. He had a contact that helped make the arrangements for him to enter the United States. He also stated that he made the arrangements about two months ago. M.G. contacted an individual named "Victor" to make the arrangements. M.G. left Mexico and landed in Toronto, Canada on April 7, 2023. Once in Toronto, M.G. waited a few hours before taking a different plane that took him to Vancouver, Canada. Once he arrived at

Complaint - 8
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the airport in Vancouver, one of the persons that met contacted the pickup ride. The person who contacted the pickup vehicle was "El Chaparrito."

14. M.G. and two other people were taken from the airport to the border area. M.G. was told that once at the border, all he needed to do was run from the Canada side of the border to the United States side of the border. M.G. saw a person waiting for them on the United Sates side of the border after he ran across. That person told M.G. to follow him to the pickup vehicles. Once M.G. crossed the border, he saw two vehicles and he was told to get in one of the vehicles. There was a total of five people in the load up vehicle that picked him up. Before he crossed the border, he paid "El Chaparrito" $1200.00 CAD. When M.G. paid his smuggling fees, he noticed that almost everyone in the group had already paid their smuggling fees. M.G. identified BRUNO-JOAQUIN in a six-person photo lineup as "El Chaparrito," the person he gave the $1200.00 CAD to, in order to cross into the United States.

15. On April 9, 2023, a video-recorded sworn statement was taken from K.D. at the Sumas Border Patrol Station at 8:22 p.m. Border Patrol Agent Abel Pena and Border Patrol Agents-Intel Brendan Victorson conducted the interview in K.D.'s native Spanish language. Agent Pena is a native Spanish speaker. In the interview that followed, K.D. made the following statements:

//
//
//

Complaint - 9
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. K.D. is a Mexican national and has never had permission to enter the United States legally. K.D.'s claims were verified through fingerprints and records checks. K.D. moved to Vancouver, Canada nine months ago and spent those nine months working in Vancouver, Canada while he lived with some friends of his sister. After living in Vancouver, K.D. and his wife made some arrangements with a man named Don Pedro to be smuggled into the United States through Vancouver, Canada. K.D. made the arrangements via cellphone and was going to pay 5,500 CAD to be smuggled into the U.S. He was given instructions by Don Pedro to be at the airport on April 8, 2023, by 5 p.m. so that he could be picked up.

17. At the airport, K.D. recognized a group of familiar faces from his hometown in Mexico that were going to be picked up by the same people. Two cars picked them up and drove them to the United States/Canada Border. The front seat passenger of the car he was in got out of the vehicle and walked with the group across the border to guide them to where they would be picked up in the United States. K.D. stated that he paid the front seat passenger 2,000 CAD as instructed by Don Pedro. K.D. was later able to identify the front seat passenger/foot guide in a six-person photo lineup as BRUNO-JOAQUIN.

18. On April 9, 2023, a video-recorded sworn statement was taken from BRUNO-JOAQUIN at the Sumas Border Patrol Station at 11:00 a.m. Agent Cruz Ramirez and Agent-Brendan Victorson conducted the video-recorded interview in Defendant's native Spanish language. Before the statement was taken, BRUNO-JOAQUIN was read his Miranda Rights. BRUNO-JOAQUIN stated that he understood his rights and that he was willing to provide a statement.

//
//
//

Complaint - 10
United States v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19. BRUNO-JOAQUIN stated that he is a Mexican national and has never had permission to enter the United States legally. He stated he was in Vancouver, Canada and called a friend to help him get a ride. The defendant crossed the border on foot and helped the friend he called with transporting some acquaintances. The defendant stated he was aware the acquaintances were all here without proper documentation. The defendant admitted that he was promised compensation but does not have an exact amount that he was promised.

20. After their apprehension on April 9, 2023, (1) C.C., (2) M.G., (3) K.D., and the defendant were transported to the Northwest Immigration and Customs Enforcement Processing Center in Tacoma, Washington.

## CONCLUSION

21. Based on the foregoing facts, I have probable cause to believe ERIC BRUNO-JOAQUIN has committed the aforementioned offenses.

LACEY E. O'NEAL, Complainant
United States Border Patrol Agent

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 15th day of May, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

Complaint - 11
*United States* v. Eric Bruno-Joaquin
USAO # 2023R00542

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970